# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-0426V
UNPUBLISHED

| | |
|---|---|
| MARY GEORGE,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: July 10, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for petitioner.

*Mollie Danielle Gorney*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING DAMAGES[1]

On March 22, 2018, Mary George filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left Shoulder Injury Related to Vaccine Administration (SIRVA) as a result of an influenza ("flu") vaccination administered on January 6, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, **I find that Petitioner is entitled to an award of damages in the amount $67,265.89, representing compensation in the amount of $67,000.00 for actual pain and suffering and $265.89 for past unreimbursable expenses.**

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

### I.     Relevant Procedural History

As noted, this case was initiated in 2018. On March 25, 2019, Respondent filed his Rule 4(c) report conceding that Petitioner was entitled to compensation in this case. ECF 24. On March 28, 2019, former Chief Special Master Dorsey (to whom the case was assigned at the time)[3] issued a ruling on entitlement favoring Petitioner. ECF 25.

The parties then attempted to informally resolve the issue of damages for almost a year. *See, e.g.*, ECF 33, ECF 36, ECF 38, and ECF 43. As of February 2020, they reported an impasse on the issues of both pain and suffering and unreimbursed expenses. ECF 44. After giving the parties an opportunity to file written briefs on this issue, I scheduled this matter for an expedited hearing and ruling based upon all the evidence filed to date and the parties' briefing. ECF 53. The hearing was held on June 26, 2020.[4]

In her brief, Petitioner requests that I award her $85,000.00 for past and future pain and suffering and $279.29 for past unreimbursed medical expenses. ECF 48. Respondent proposes that I award the lesser amount of $55,000.00 in pain and suffering and $252.49 in unreimbursable expenses. ECF 51.

### II.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting

---

[3] I was appointed Chief Special Master on October 1, 2019. This case was reassigned to me that same day.

[4] The transcript from the hearing has yet to be filed, but it is incorporated by reference herein

*McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III. Appropriate Compensation in this SIRVA Case

In this case, awareness of the injury is not disputed. The record reflects that at all times, Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In so doing, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents and at the expedited hearing held on June 26, 2020. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience in adjudicating those cases.[6] However, I ultimately base my determination on the circumstances of this case.

The evidence herein establishes that Petitioner's injury was on the "mild" end of the spectrum for pain and suffering awards issued within SPU. Three weeks after receiving the flu vaccine, Petitioner complained of progressively worsening left arm pain since the injection, at which time physical examination (PE) revealed range of motion (ROM) limitations. Ex 5 at 30, 36-38. A March 2, 2016 MRI showed minimal bursitis and mild tendinopathy of the infraspinatus tendon. *Id* at 417. Petitioner subsequently received a cortisone injection in March 2016, and around the same time started physical therapy (PT) that lasted through August 2016. *Id*. at 442-443; Ex 2 at 488-652 and 944-976. At her PT visits, Petitioner's pain rating ranged from 1-4/10, but was generally 2-3/10. Ex 2.

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[6] Statistical data for all SIRVA cases resolved in SPU from inception through January 2020 as well as a brief description of any substantive decisions can be found in the following decisions: *Vinocur v. Sec'y of Health & Human Servs.*, No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Human Servs.*, No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.*, No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

By July 7, 2016, Petitioner reported 75% improvement. Ex 2 at 861-862. At that time, she had full ROM but still had positive impingement testing. *Id*.

Petitioner did not return for additional treatment until March 6, 2019. At that time, she reported that her pain had returned over the last 3-4 month due to emotional stressors. Ex 10 at 130-132. She was referred back to PT. At her initial PT eval, she reported doing Pilates and wanting "to get back to lifting activities." Ex 11 at 6. In total, Petitioner attended 40 PT sessions in 2016 and 2019, with the majority occurring in 2016. Ex 1 at 44 and Exs 2, 10, 11. Her final PT visit was on April 10, 2019. *Id*. Petitioner maintains that her injury interfered with her activities of daily life and that she has experienced constant pain and decreased ROM since onset. Exs 10 and 12.

As I informed the parties during the expedited hearing conducted on June 26, 2020,[7] the question in this case is not whether Petitioner is entitled to *any* compensation for her pain and suffering, but rather *what* amount of compensation is justified, based upon the facts of the case and considered relevant input. This determination is not an exact science but more of an art. While it is tempting to "split the difference" and award an amount halfway between the amounts proposed by the parties (acknowledging that in this case, the parties' respective positions reasonably "frame" high and low potential awards), each petitioner deserves an examination of the specific facts in his or her case. Thus, while amounts ultimately awarded may end up falling somewhere in the range between the awards proposed by both parties, this result flows from a specific analysis of Ms. George's personal circumstances.

Overall, the record establishes that the majority of Petitioner's treatment consisted of physical therapy. She did not undergo surgery and received only one cortisone injection. Her initial course of treatment lasted approximately seven months and she was only briefly treated for a flare of symptoms three years later. The circumstances in Petitioner's case are most like those in *Dagen*,[8] in which $65,000.00 was determined an appropriate award for pain and suffering. The petitioner in *Dagen* reported "fairly significant" pain but also reported an 80 percent overall improvement within six months. *Id*. While Petitioner alleges severe pain, this is not supported by her treatment or her own pain ratings at her PT visits. Further, when she returned to her doctor in 2019, she essentially acknowledged that her symptoms had resolved by August 2016, within eight months of her injury. Exs 10, 11. There are also no other extenuating circumstances justifying a higher award.

I have also considered the other cases referenced by Petitioner in her brief in support of her pain and suffering valuation, but find that those awards are higher than

---

[7] An official recording of the proceeding was taken by court reporter, and a link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entries for this proceeding. Minute Entry, dated June 26, 2020; *see also* www.uscfc.uscourts.gov/trans (last visited July 9, 2020).

[8] *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019).

what is appropriate here given the facts.[9] The petitioners in these cases all had confounding variables not present in the current case that justified higher awards (e.g., greater pain, increased length of symptoms, difficulty caring for very young children and an elderly parent). Respondent also referenced *Knauss*[10] in his brief to support a lower award, but it too presents inapposite facts. The petitioner's pain in that case had virtually resolved after only five months and 23 PT sessions. Therefore, I find an award of $67,000 is appropriate for Petitioner's pain and suffering.

As for the claim regarding unreimbursed expenses, Respondent is prepared to accede to some mileage award, but disputes that reimbursement for Petitioner's mileage for her treatment in 2019 should be awarded because such treatment is too attenuated to be properly associated with her SIRVA. ECF 51 at 12 nn. 2 and 4. Because the difference between the parties' positions is so miniscule,[11] and because the evidence does not demonstrate definitively that Petitioner's symptoms in 2019 were or were not related to her SIRVA, I will "split the difference" and award Petitioner $265.89.

## IV. Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $67,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[12] **I also find that Petitioner is entitled to $265.89 in actual unreimbursable expenses.**

Accordingly, **I award Petitioner a lump sum payment of $67,265.89 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

---

[9] These cases include *Desrosiers v. Sec'y of Health & Human Servs.*, No. 16-0224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017); *Goring v. Sec'y of Health & Human Servs.*, No. 16-1458V, 2019 WL 6049009 (Fed. Cl. Spec. Mstr. Aug. 23, 2019); *Lucarelli v. Sec'y of Health & Human Servs.*, No. 16-1721V, 2019 WL 5889235 (Fed. Cl. Spec. Mstr. Aug. 21, 2019); *Kent v. Sec'y of Health & Human Servs.*, No. 17-0073V, 2019 WL 5579493 (Fed. Cl. Spec. Mstr. Aug. 7, 2019); *Bordelon v. Sec'y of Health & Human Servs.*, No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019); *Marino v. Sec'y of Health & Human Servs.,* No. 16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018); *Kim v. Sec'y of Health & Human Servs.*, No. 17-0418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018); *Dirksen v. Sec'y of Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018); *Bruegging v. Sec'y of Health & Human Servs.,* No. 17-0261V, 2019 WL 2620957 (Fed. Cl. Spec. Mstr. May 13, 2019).

[10] *Knauss v. Sec'y of Health & Human Servs.,* No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering).

[11] The difference between the parties' proposals for reimbursement is $26.80.

[12] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The clerk of the court is directed to enter judgment in accordance with this decision.[13]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.